NUMBER 13-03-041-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


DANIEL LEE WEBB, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 184th District Court of Harris County, Texas.

 


MEMORANDUM OPINION


Before Justices Castillo, Garza, and Wittig (1)


Memorandum Opinion by Justice Garza


Appellant, Daniel Lee Webb, was convicted of aggravated sexual assault and
appealed the conviction. Although his issues were overruled on appeal and his conviction
was affirmed, see Webb v. State, 995 S.W.2d 295 (Tex. App.--Houston [14th Dist.] 1999,
no pet.), appellant was later granted a retrial as a result of a post-conviction proceeding for
writ of habeas corpus. Upon retrial before a different judge, appellant was again convicted
of aggravated sexual assault. After a punishment hearing before the trial court, appellant
was sentenced to an even greater length of imprisonment. He now appeals by 14 issues. 
We affirm. 

I.

In his first issue, appellant contends that Judge Joan Huffman committed reversible
error in failing to recuse herself sua sponte from both phases of the retrial, which from this
point forward, we will simply refer to as "the trial." The record shows that Judge Huffman
recused herself sua sponte during the punishment phase of trial after giving the parties the
following explanation for her actions:

Based on some of the testimony from the last witness, for personal reasons,
I will recuse myself from this case at this time. I want to make clear for the
record that any issues or reasons that have caused me to recuse myself at
this time were - I had no knowledge of that - without getting into what they
are, I had no knowledge of those reasons until the witness began to testify. 
So the entire trial that was conducted in the presence of the jury and any
testimony - any portions of the trial that I presided over, prior to the last
witness testifying, were all done without any knowledge of any of the issues
that have now caused me to recuse myself. 


Although appellant contends that Judge Huffman should have recused herself
sooner than she did, he points to no motion for recusal or other objection to her
participation made prior to the time that she actually recused herself. See Tex. R. Civ. P.
18a; Tex. R. App. P. 33.1; Arnold v. State, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993)
("[Rule] 18a applies to criminal cases . . . ."). Furthermore, Judge Huffman's explanation
of the circumstances of the recusal gives us no basis for concluding that she should have
recused herself sooner than she did. 

The instant case differs from the precedent set by appellant's primary source of
authority, Martin v. State, 876 S.W.2d 396, 397 (Tex. App.--Fort Worth 1994, no pet.). 
Unlike appellant, who never filed a motion for recusal, Martin filed motions for recusal and
mistrial upon learning of grounds for mandatory recusal, which should have been apparent
to the trial court from the outset of the proceedings. Id. Martin's motions were overruled,
and he subsequently appealed. Id. Noting that Martin could not have known the basis for
recusal prior to the deadline for complying with Rule 18a, the court of appeals concluded
that Martin had not waived his objections--as the State had argued--by making them upon
learning the grounds for recusal. Id. at 398. 

Appellant's failure to file any motion for recusal challenging any of Judge Huffman's
participation in either phase of trial removes this case from the holding in Martin. There
being no additional support offered for appellant's first issue, it is overruled. 

II.

 In his second issue, appellant contends that Judge Jan Krocker, who presided over
the remainder of his trial, erred in denying his request for an evidentiary hearing on his
motion for new trial as it related to Judge Huffman's recusal. We disagree. The purpose
of a hearing on a motion for new trial is to allow the defendant to fully develop the issues
raised in the motion. Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994). To
be entitled to a hearing on a motion for new trial, a defendant need only assert reasonable
grounds for relief which are not determinable from the record. Id. If the defendant's
motion and affidavit are sufficient to raise such grounds, a hearing on the motion is
mandatory. Id. If the trial court denies a hearing on the motion for new trial and the
defendant appeals from that denial, we review the trial court's decision for abuse of
discretion. Wallace v. State, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). 

Among other things, appellant's motion for new trial alleged that he and Judge
Huffman "had known each other prior to trial" and that they had a "personal relationship." 
Based on these allegations, appellant's motion for new trial claimed that Judge Huffman
should have sua sponte recused herself from the entire trial, as the "personal relationship
. . . resulted in a conflict between the two and created a bias and prejudice from Judge
Huffman against the Appellant." 

 As noted above, appellant failed to raise any objection to Judge Huffman's
participation in the case until after trial, thus precluding any relief on his complaint. See
Tex. R. Civ. P. 18a; Tex. R. App. P. 33.1; Arnold, 853 S.W.2d at 544. There were therefore
no fact issues to be resolved at the requested evidentiary hearing. Accordingly, Judge
Krocker did not abuse her discretion in denying the request for an evidentiary hearing. See
Wallace, 106 S.W.3d at 108. Appellant's second issue is overruled. 

III.

 In his third issue, appellant contends that the trial court committed reversible error
by failing to grant a mistrial after being informed that four prosecutors had rifled through
appellant's belongings, including photographs and negatives, during a court recess when
appellant was detained in a holding cell. Appellant was a pro se defendant at the time of
the incident. 

 The trial court held an evidentiary hearing to investigate appellant's complaint of
prosecutorial misconduct. At the hearing, the State called the four prosecutors as
witnesses and examined them on their participation in the complained-of activity. Although
the prosecutors admitted viewing the photographs, they insisted that their acts were
unintentional and gave individual accounts and explanations for their conduct, including a
common mistaken belief that the photographs were marked as exhibits and were therefore
open to review. 

After hearing the testimony, the trial court overruled appellant's motion for mistrial,
giving the following explanation for her decision:

The Court will make a finding that your [meaning appellant's] items were
spread out over about - that's probably about a 6 or 8 foot surface area. 
The pictures were on the far perimeter of your area. From here they appear
that the ones in question had some type of stickers on it [sic], other than I
guess the one that [the first prosecutor] testified to with her explanation that
she put it down immediately.


And I'll say on the record that it's standard practice of the Court that exhibits
are marked and left among the courtrooms for those that have permission
to be inside that bar, are often perused during breaks. It's common practice
in Harris County criminal courtrooms. 


In determining whether a mistrial was appropriate, we consider the (1) severity of
the misconduct (the magnitude of the prejudicial effect of the prosecutor's misconduct), (2)
measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the
judge), and (3) the certainty of conviction absent the misconduct (the strength of the
evidence supporting the conviction). Ramon v. State, 159 S.W.3d 927, 929 (Tex. Crim.
App. 2004). Prosecutorial misconduct reasonably reaches only that conduct which is
qualitatively more serious than simple error and connotes an intentional flouting of known
rules or laws. Ex parte Peterson, 117 S.W.3d 804, 816 n. 55 (Tex. Crim. App. 2003). This
Court will not hesitate to reverse a judgment when the prosecutor engages in conduct
calculated to deny the accused a fair and impartial trial. See Johnson v. State, 604 S.W.2d
128, 135 (Tex. Crim. App. 1980). 

The testimony from the four prosecutors tended to prove that the prosecutors did
not intentionally flout known rules or laws. See Ex parte Peterson, 117 S.W.3d at 816
n.55. It is apparent that, upon hearing the live testimony from those involved, the trial court
did not view their actions as intentional misconduct. Although obviously ill-advised and
unprofessional, it is our opinion that the prosecutors' actions fall short of conduct calculated
to deny the accused a fair and impartial trial. See Johnson, 604 S.W.2d at 135. Without
condoning the conduct at issue, we hold that the trial court did not abuse its discretion in
denying appellant's request for a mistrial. See Ladd v. State, 3 S.W.3d 547, 567 (Tex.
Crim. App. 1999) (stating that abuse of discretion applies to review of denial request for
mistrial). We therefore overrule appellant's third issue.

IV.

In his fourth issue, appellant argues that the trial court committed reversible error
in denying his objections to the State's use of the term "rapist" to identify appellant during
its closing argument. To constitute proper jury argument, the argument must encompass
one of the following: (1) summation of the evidence presented at trial, (2) reasonable
deduction(s) drawn from that evidence, (3) answer(s) to the opposing counsel's argument,
or (4) a plea for law enforcement. McFarland v. State, 845 S.W.2d 824, 844 (Tex. Crim.
App. 1992) (citing Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988)). In
examining challenges to jury argument, we consider the remark in the context in which it
appears. Gaddis, 753 S.W.2d at 398. Counsel is allowed wide latitude without limitation
in drawing inferences from the evidence so long as the inferences drawn are reasonable,
fair, legitimate, and offered in good faith. Gaddis, 753 S.W.2d at 398. Conversely, the jury
argument must be extreme or manifestly improper or inject new and harmful facts into
evidence to constitute reversible error. Id.

 As noted above, appellant was tried and convicted for aggravated sexual assault. 
We view the prosecution's references to appellant as a rapist in closing argument as
consistent with the State's position that appellant committed aggravated sexual assault. 
Appellant's principal objection to the State's use of the word rapist is that it unfairly
suggested to the jury that appellant had been previously convicted of rape, which appellant
defines narrowly as forced vaginal intercourse. Because there were no allegations of
forced vaginal intercourse in the instant case, appellant contends that it was reversible
error for the trial court to allow the State to call him a rapist. 

We disagree. The State's "rapist" statements were not made in a manner or context
that suggested a rape conviction in a prior proceeding. To the contrary, the "rapist"
statements arose directly from the acts established by the evidence at trial, which tended
to prove that appellant committed the offense of aggravated sexual assault. We view the
prosecution's "rapist" statements as within at least the first two categories of valid argument
enumerated above, summation of the evidence presented at trial and reasonable
deductions drawn from that evidence, respectively. See McFarland, 845 S.W.2d at 844. 
 We also note that appellant has failed to provide any authority for disallowing use
of the term "rapist" to identify the perpetrator in a trial for aggravated sexual assault. See
Griffith v. State, 116 S.W.3d 782, 787 (Tex. Crim. App. 2003) ("As enacted in 1973, the
rape statutes prohibited conduct that is now prohibited by the sexual assault and
aggravated sexual assault statutes."). In our view, it would be an undue hardship for the
State to be categorically denied use of a word that so aptly describes the culpable criminal
conduct alleged in the indictment and sought to be established beyond a reasonable doubt
by evidence and live testimony at trial. Having no basis for imposing this restriction, we
hold that appellant has not demonstrated any improper jury argument. His fourth issue
is therefore overruled. 

V.

 In his fifth issue, appellant complains that the trial court erred in denying his motion
to quash the venire panel based on appellant's concern that some of the veniremen may
have overhead a conversation between appellant, the State, and the trial court involving
appellant's prior conviction. 

 Again, the trial court indulged appellant with an evidentiary hearing to investigate his
complaint. After allowing appellant to call three witnesses to support his assertion that the
veniremen could have overheard the conversation, the trial court denied appellant's motion 
to dismiss the panel:

It continues to be the Court's opinion that there were very few people that
had entered the courtroom. They were not looking up here. The discussion
was clearly not about you. Your back was to them. [The prosecutor's] back
was to them. And it was not apparent to them what you were talking about. 
They may have heard the word "conviction" - I doubt it - if they were even
paying attention. The deputy was immediately in front of them giving them
orders and directions. I do not believe there would be any taint or biases
toward you whatsoever. I'm convinced that the jurors had no knowledge or
information about what was going on in regards to you and / or a conviction. 



 We are in no position to review the trial court's firsthand account of the conversation
or to second-guess its opinion that the conversation could not have been overheard or
understood by any members of the venire panel. We would greatly exceed the purview of
our authority as an appellate court, if we were to encroach on the trial court's fact-finding
function by disbelieving its resolution of the dispute in favor of appellant's complaint. 
Appellant's fifth issue is overruled. 

VI.

In his sixth issue, appellant contends that the trial court erred in denying his request
for an evidentiary hearing on his motion for new trial as it related to grounds of ineffective
assistance of counsel. Appellant's pro se motion for new trial and affidavit claimed that
appellant was denied effective assistance of counsel because (1) counsel had a conflict
of interest since he was the subject of an ineffective assistance of counsel claim by
appellant in a post-conviction proceeding for writ of habeas corpus, (2) counsel was
unprepared to proceed on the punishment phase of trial since he had been appointed on
a Friday and sentencing began the next Monday, and (3) counsel misinformed appellant
regarding sentencing and probation. 

We overrule appellant's sixth issue because the record shows that the trial court did
hold a hearing on the ineffective assistance of counsel claims alleged in appellant's pro se
motion for new trial. Although a hearing was held, the trial court did not allow appellant to
present live testimony. Instead, it allowed appellant to offer evidence in affidavit form,
which appellant did and thereby developed and substantiated his ground for new trial. See
Jordan, 883 S.W.2d at 665. Appellant has not shown this was an abuse of discretion. 
See Tex. R. App. P. 21.7 ("The court may receive evidence by affidavit or otherwise.");
McIntire v. State, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985). 

VII.

 In his seventh issue, appellant contends that the trial court erred by sentencing him
on re-trial to a lengthier prison term than what he was assessed in his first trial. See North
Carolina v. Pearce, 395 U.S. 711, 725-26 (1969) (indicating that a presumption of judicial
vindictiveness applies even where different sentencing judges are involved, thus barring
an increase in sentence on retrial). We disagree. The United States Supreme Court has
clarified that the Pearce presumption is inapplicable and the due process clause is not
violated where different "sentencers" assess varying "sentences" and the trial judge at the
second trial provided an on-the-record logical, non-vindictive reason for the greater
punishment. See Tex. v. McCullough, 475 U.S. 134, 140 n.3 (1986); Jackson v. State, 766
S.W.2d 518, 520 (Tex. Crim. App. 1988). 

Appellant's prior sentence was imposed by a different judge. Thus, we have a
situation where different "sentencers" have assessed varying "sentences." See
McCullough, 475 U.S. at 140 n.3. The judge who imposed the second sentence also
articulated her non-vindictive reasons for considering the full range of punishment:I'm going to find that the evidence presented in the re-trial at the punishment
phase is significantly different from the evidence presented at the original
trial in this case; and therefore, it would be my view that the Court has, for its
consideration, the entire range of five years to life in prison. Plus, a fine up
to $10,000.


I'm going to go ahead and make that finding now so when you make your
argument as to the appropriate sentence, that ruling will already be in place
so you know to argue between five and life and not 5 and 30 [the previous
sentence], because I think it is clear from this record there is a substantial
difference in the evidence presented and I find it to be entirely proper under
Texas law for me to consider things which occurred after the last trial. I think
the law is pretty clear. 

 

 Appellant acknowledges these statements, but he insists that they constitute "no
reason" for the increase in his prison term. Although we might agree that, in the above
statements, the trial court focused on the possible sentencing range rather than on a
specific proposed sentence, we nevertheless disagree with appellant's ultimate averment
of impropriety. The trial court acknowledged the previous sentence of 30 years and
informed counsel that she would be considering the full range of punishment allowed by
law for the specific reason that "there is a substantial difference in the evidence presented." 
Even if the Pearce presumption of vindictiveness were applicable, which it is not, it would
have been effectively rebutted. See id. at 140 ("The presumption is also inapplicable
because different sentencers assessed the varying sentences . . . ."). 

Appellant's seventh issue is overruled. 

VIII.

 In his eighth issue, appellant argues that his constitutional rights were violated
because he was "effectively without counsel" during the time to file a motion for new trial. 
The record shows that appellant timely filed a pro se motion for new trial, even though the
trial court had previously appointed an attorney to represent him during the time for filing
a motion for new trial. Appellant's court-appointed counsel appeared before the court two
days after appellant's pro-se motion was file-stamped by the clerk of the court. At that
time, counsel presented appellant's pro-se motion to the court and described the difficulties
he had encountered in contacting appellant and filing his own motion for new trial. The
court granted counsel leave to file a supplemental motion for new trial, and the record
shows that counsel filed the supplemental motion for new trial within the time allowed by
the court. 

 Although the court of criminal appeals has held that a defendant is entitled to
counsel at a hearing on a motion for a new trial, Trevino v. State, 565 S.W.2d 938, 940
(Tex. Crim. App. 1978), it has yet to address the issue of whether a defendant is entitled
to counsel during the time limit for filing a motion for new trial to assist the defendant in
preparing the motion, Smith v. State, 17 S.W.3d 660, 663 n.3 (Tex. Crim. App. 2000).
Assuming this right to counsel exists, a claim on direct appeal of denial of counsel should
be entertained and sustained only if supported by the record. Oldham v. State, 977
S.W.2d 354, 360 (Tex. Crim. App. 1998). Because appellant's claim is not supported by
the record, which affirmatively demonstrates that he had counsel who did not abandon him,
we have no basis for sustaining it. 

In overruling appellant's eighth issue, we emphasize the difference between a claim
of having no counsel, see id., and a claim of receiving ineffective assistance of counsel,
see Strickland v. State, 466 U.S. 668, 688-93 (1984). Being in the former category, and
not the latter, appellant's eighth issue is overruled as unsupported by the record.

IX. - X.

 In his ninth and tenth issues, appellant argues that the trial court committed
reversible error by discharging appellant's "standby counsel." The reporter's record shows
the following exchange:


The State: Judge, can we determine whether or not - - make it clear on
the record that the . . . [appellant] has also unequivocally
waived his standby counsel, although he doesn't have a right
to standby counsel. He has said, I do not want standby
counsel; and that is still his position. 


The Court: That's what he has told me before. Is that correct, Mr. Webb?


Appellant: Yes, Your Honor. 


The Court: All right. He's told me he didn't want standby counsel. He
asked me to get rid of . . . [standby counsel], which I did. I
honored his request, because he didn't like . . . [standby
counsel] the way things were going down. Correct Mr. Webb?


Appellant: Absolutely. 

 

On this record, there are no arguable grounds for questioning the trial court's actions
in removing and discharging appellant's standby counsel. See Tucker v. State, 771
S.W.2d 523, 534 (Tex. Crim. App. 1988) ("[T]he accused cannot first invite error and then
complain about it on appeal."). Appellant's ninth and tenth issues are overruled.

XI., XII., & XIV.

 In his eleventh, twelfth, and fourteenth issues, appellant contends that he received
ineffective assistance of counsel at trial. See Strickland, 466 U.S. at 686; U.S. Const.
amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 1977). 
Under the Strickland standard articulated by the United States Supreme Court, a defendant
must demonstrate the coalescence of two conditions to prevail on an ineffectiveness claim: 
(1) counsel's performance was deficient because it fell below an objective standard of
reasonableness; and (2) a reasonable probability exists that, but for counsel's deficient
performance, the result of the proceeding would have differed. Strickland, 466 U.S. at
686. 

Appellant identifies three instances of allegedly deficient performance by his court-appointed counsel: (1) counsel's advice, based on his interpretation of Pearce, to allow
the court rather than a jury to determine punishment; (2) counsel's failure to cross-examine
Michael Taylor, a witness for the State; (2) and (3) counsel's failure to interview and
subpoena other specified witnesses. 

At the outset, we note that the above points must be addressed somewhat
differently, as the trial court received evidence on the first point but not on the others.
Appellant has the burden of showing that the allegations of ineffectiveness are firmly
founded in the record and that the record affirmatively demonstrates the alleged
ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The two-pronged test articulated in Strickland is a benchmark for gauging the overarching and
determinative question of whether counsel's conduct so undermined the proper functioning
of the adversarial process that the trial cannot be relied on as having produced a reliable
result. McFarland, 845 S.W.2d at 843. 

Where, as in appellant's second and third points, there is no indication of counsel's
reasons or strategy for the complained-of assistance, we occupy an extremely limited
position to critique counsel's performance. Mindful that our judicial review must be highly
deferential to trial counsel and that we must avoid the deleterious effects of hindsight, see
Thompson, 9 S.W.3d at 813, we will not find counsel's assistance to be ineffective by
speculating as to his reasons for the complained-of assistance, see Gamble v. State, 916
S.W.2d 92, 93 (Tex. App.--Houston [1st Dist.] 1996, no pet.). Because appellant has not
rebutted the strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance by producing evidence of counsel's reasons or strategy
for the complained-of activity, we overrule his ineffectiveness claim as it relates to points
two and three above, which are, respectively, issues eleven and fourteen on appeal. See
Strickland, 466 U.S. at 668; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).

We treat appellant's first point, or twelfth issue on appeal, differently because
appellant included it in his motion for new trial and was able to submit supporting evidence
at a hearing on this particular ground for his ineffectiveness claim. Thus, we have for our
review and consideration a record of evidence tending to prove the facts surrounding
appellant's decision to have the trial court determine his sentence. 

As noted above, appellant filed a pro se motion for new trial, in which he argued,
among other things, that he received ineffective assistance of counsel because counsel
had misguided him into having the trial court assess punishment. Appellant argued that,
had this advice not been given, he "would have remained with the jury for sentencing." 

The trial court held a hearing on the motion for new trial, at which time, appellant
and the State offered competing affidavits regarding appellant's decision to allow the trial
court to assess punishment. Appellant's affidavit included allegations consistent with his
twelfth issue. The State offered an affidavit by appellant's appointed-counsel, in which
counsel agreed with appellant's statement of his legal advice regarding Pearce, but
counsel's affidavit also noted that appellant "was so confident that the case would be
reversed on appeal that he really didn't care what he was sentenced to" and that he "was
scared by the fact that the jury had reached their guilty verdict so quickly." Based on this
evidence, the trial court overruled appellant's ground for new trial. 

We overrule the issue on appeal, holding that, as an ineffectiveness claim,
appellant's twelfth issue is defective in that it fails to establish by a preponderance of the
evidence that the result in the proceeding would have been different in the absence of the
allegedly deficient performance of counsel. See Strickland, 466 U.S. at 686. In light of the
evidence adduced at the hearing on the motion for new trial, we can only speculate as to
whether appellant would have elected for the jury to determine his punishment if counsel
had given a different opinion as to the applicability of the Pearce presumption. Similarly,
any conclusion that, based on the facts of the case, the outcome of the proceeding would
have been different because a jury's sentence would have been more favorable to
appellant than that of the trial court would capitalize upon an anti-jurist bias to which this
Court is obviously unsympathetic. We will not presume that the trial court was unduly
harsh in sentencing appellant solely for the sake of satisfying the otherwise unanswered
second prong of the Strickland test. 

Appellant's eleventh, twelfth, and fourteenth issues are therefore overruled. 

XIII.

 In his thirteenth issue, appellant argues that the trial court erred by refusing to allow
his appointed counsel ten days to prepare for the punishment phase of trial. See Tex.
Code Crim. Proc. Ann. art. 1.051(e) (Vernon Supp. 2004-05). As noted above, appellant
was pro se during the guilt-innocence phase of trial. After the punishment phase of trial
commenced and the State had begun examining its first witness, appellant complained that
he was "not prepared for this witness" and withdrew his waiver of the right to counsel. The
trial court stopped the proceeding and appointed counsel for appellant: "It's clear to the
Court that adequate notice was given on this extraneous offense for punishment purposes. 
And it's clear to the Court that you're manipulating the Court, Mr. Webb, which is clearly
what you want to do. Everybody in this Court room knows it, and now you know it."

Court-appointed counsel, the same attorney whose allegedly ineffective assistance
is the subject of appellant's eleventh, twelfth, and fourteenth issues, appeared in behalf of
appellant at the punishment phase of the trial, which commenced anew on the following
Monday. Counsel did not make any requests for additional time to prepare for the
punishment phase. 

These facts do not establish an abuse of discretion. See id. 1.051(h) ("If the
defendant withdraws a waiver, the trial court, in its discretion, may provide the appointed
counsel 10 days to prepare."); Cole v. State, 929 S.W.2d 102, 103 (Tex. App.--Beaumont
1996, pet. ref'd) ("[A]n attorney who is appointed to represent a defendant who has
withdrawn a previous waiver of counsel is not automatically entitled to ten days to prepare
for trial."). Having failed to address the trial court's discretion in this regard, appellant has
also failed to present a viable basis for sustaining his thirteenth issue. It is therefore
overruled. 

Conclusion

 The judgment of the trial court is affirmed. 

 

 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 7th day of December, 2006.
1. 1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon Supp. 2004). 
2. 2. Michael Taylor, a "contractor" with the Bureau of Alcohol, Tobacco, and Firearms, testified that he had
investigated the bombing of a large nightclub in 1981 and that appellant was one of the seven conspirators. 
Defense counsel apparently did not cross examine Taylor. The court noted that it would consider the
testimony for purposes of sentencing.